Samuel J. Fortier, Esq.
FORTIER & MIKKO, P.C.
1600 A Street, Suite 101
Anchorage, Alaska 99501
Ph: (907) 277-4222
Fax: (907) 277-4221
Email: sfortier@fortiermikko.com
Attorneys for Yak-Tat Kwaan, Inc.

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| AGWEST FARM CREDIT, PCA )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KIMBERLY C, O.N. 596518, its Engines, )<br>Machinery, Appurtenances, etc., )<br>And RM 250, O.N. 928702, its Machinery, )<br>Appurtenances, etc., )<br>In Rem, )<br>)<br>And )<br>YAK TIMBER, INC., an Alaska corporation, )<br>In Personam, )<br>Defendants. )<br>_____) | No.: 3:23-cv-00072-HRH |

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW YAK TIMBER, INC. ("TIMBER") In Personam and the Kimberly

C, O.N. 596518, and RM 250, O.N. 928702, in Rem, through counsel, and hereby oppose

Agwest Farm Credit, PCA's ("Farm Credit") motion for preliminary injunction to maintain location and inspection of the collateral vessels.

## 1. INTRODUCTION

The Bank asserts that notwithstanding communication between TIMBER, its counsel and Agwest Farm Credit personnel and counsel, TIMBER has failed to provide the requested information. As will be demonstrated below, and in the Declarations attached, Farm Credit's assertions are not accurate. Farm Credit also asserts that the vessels are underinsured. That assertion likewise is not correct.

Nor has TIMBER denied the Bank an opportunity for inspection.[1] Indeed, as Ms. Jensen testifies, in her discussions with Mr. David Poor, the Bank's special credits officer, it was agreed that TIMBER could arrange an independent, third party inspection by a qualified surveyor. CEO Jensen was in the process of identifying qualified marine surveyors at the time the Bank filed its motion for preliminary injunction.[2] It is also false that TIMBER failed to consent to Farm Credit obtaining repair maintenance and classification records. Indeed, the copies of the waivers are attached to the Declaration of Shari Jensen.[3]

It is not true, either, that TIMBER failed to provide any response to the Bank's request for stipulation. As more fully described in Ms. Jensen's declaration, the stipulation

---

[1] *See* Declaration of Shari Jensen.
[2] *Id.*
[3] *Id.*

*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC          Page 2 of 11

Case 3:23-cv-00072-HRH   Document 13   Filed 05/10/23   Page 2 of 11

was provided by TIMBER's Seattle counsel on Sunday evening, April 30, 2023, but was not submitted to TIMBER for review until May 4, 2023, a day before the instant motion was filed.[4]

The Bank further bases its argument that TIMBER failed to respond to Farm Credit's instructions that TIMBER was not authorized to "use, sell, move, relocate, or materially at fact the value of the loan collateral, including the In Rem vessels." But that is also untrue. TIMBER counsel met with Farm Credit.

Farm Credit alleges with no proof that the vessels "apparently do not have updated safety equipment and have expired documentation" as an additional basis, apparently, this motion for preliminary injunction. In fact, the certificate of inspection and the certificate of documentation are current.[5]

In short TIMBER has not failed to engage. It has attempted to engage, as is more fully demonstrated in the attached Declarations. The vessels are fully insured. For these reasons, Farm Credit's request for extraordinary relief should not be granted.

## II. STATEMENT OF FACTS

Yak-Tat Kwaan, Inc. ("KWAAN") is the parent company for TIMBER, and is the Guarantor of the 13 million dollars in loans made to TIMBER over the past 2 years.[6] KWAAN is the Alaska Native Village Corporation organized pursuant to the Alaska

---

[4] *See* Declaration of Shari Jensen.
[5] *See* Declaration of Marvin Adams.
[6] *See* Declaration of Shari Jensen.

*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC                                           Page 3 of 11

Case 3:23-cv-00072-HRH   Document 13   Filed 05/10/23   Page 3 of 11

Native Claims Settlement Act, 43 U.S.C. § 1601, *et. seq.*, for and on behalf of the Native Village of Yakutat.[7]

KWAAN incorporated TIMBER in 2018 in order to gain a foothold in the timber industry. By 2020 timber prices were rising and the KWAAN Board felt comfortable in supporting its wholly owned subsidiary, TIMBER, in its efforts to log timber and sell the same in a market TIMBER had developed with an international company.

Notwithstanding the COVID-19 worldwide pandemic, with timber values rising, an international company interested in purchasing its timber, and KWAAN's ownership interests in an old-growth privately owned forest of Sitka Spruce trees, both the Bank and TIMBER saw an opportunity. That is why the loans were extended over the next two years.

TIMBER was able to harvest a significant amount of timber on KWAAN land at a considerable profit. Indeed, and as shown in the 2 years operations, the company generated over 5.6 million dollars in revenues.[8] But, a storm had been brewing in part due to outside interests.[9]

Unfortunately, political events conspired against TIMBER in 2022. Sealaska, the Alaska Native Regional Corporation for Southeast Alaska. and several Village

---

[7] *Id.*
[8] *See* general Angela Denning, Yak Timber shuts down after shareholder opposition, Coast Alaska, October 12, 2022. (https://www.kcaw.org/2022/10/12/Yak-Timber-shuts-down-after-shareholder-opposition/last assessed 5/9/2023)
[9] *See* Jacob Resneck, rifts widen over Yak-Tak Village Corporation's expanded logging, October 28, 2021 (https://alaskapublic.org/2021/10/28/rifts/widen/over/Yak-Tak/Village/Corporations/expanded/logging/last assessed 5/9/2023/)

*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC                    Page 4 of 11

Corporations had earlier generated revenues through carbon credit programs to <u>not</u> harvest their timber for a period of 100 years. TIMBER, on the other hand, viewed the carbon credit program as less profitable and presenting more risks, including the risk of loss and forest fires with the changing global climate.

TIMBER and its parent company were transparent with the Bank, and fully explained the issues and the political fallout they were facing. Indeed, notwithstanding that TIMBER employed mainly KWAAN shareholders, the uproar continued. The Bank was able to access the riotous activities on Facebook. The Bank and KWAAN as well as TIMBER representatives met and discussed their efforts.

As a result of the political fallout, TIMBER undertook the exploration of new markets. As more fully explained in the Declaration of Marvin Adams, a new opportunity opened with the possibility of shipping scrap metal to Washington state, where a brokerage owned by another Alaska Regional Corporation, Bering Straits Native Corporation, would broker the scrap metal.[10] There is a gold mine of scrap metal in Cordova. TIMBER CEO Adams arranged to haul the scrap metal out of Cordova, pursuant to the brokerage services. Estimated net profits were over $750,000.[11] This opportunity was well known to the Bank. Farm Credit's letter demanding that TIMBER immediately cease operations and keep the vessels in Yakutat halted that opportunity.

---

[10] *See* Declaration of Marvin Adams.
[11] *Id.*

*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC          Page 5 of 11

The Bank now asserts that it is concerned about "the condition of risks of the vessels …." That risk does not exist. Indeed, each of the points raised by the Bank is demonstrably in error.

ARGUMENT

A.  Standard of Review

It has long been held that "injunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted." *Goldberg v. Barreca*, 2017 U.S. Dist. Lexis 126006 *2*4 quoting *Shelton v. National Collegiate Athletic Assoc.* 539 F.2d 1197, 1199 (9th Cir. 1976).

The court must consider the following elements to determine whether to issue a preliminary injunction:

1. A likelihood of success on the merits;
2. A likelihood of irreparable injury if a preliminary is not granted;
3. Balance of hardship; and
4. Advancement of a public interest.

*Stanley v. University of South Carolina*, 13 F.3d 1313, 1319 (9th Cir. 1994) and Fed. R. Civ. P. 65.

*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC                                              Page 6 of 11

Case 3:23-cv-00072-HRH   Document 13   Filed 05/10/23   Page 6 of 11

To obtain injunctive relief, the Bank must show

> [it]I]t is 'under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not contractual or hypothetical; it must be fairly traceable to the challenged action of the defendant, and it must be likely that favorable judicial decision would prevent or redress the injury.

*See Center for Food Safety v. Vilsack,* 636, Fed.3d 1167, 1171 (9th Cir. 2011)(quoting *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009).

1. <u>Farm Credit is Not Entitled to a Preliminary Injunction</u>

Although Farm Credit asserts that it satisfies the first prong of the preliminary injunction analysis, it also concedes that the case has just been filed, TIMBER has not entered the case, and TIMBER challenges and disputes that it is in default of the loan documents. This, notwithstanding that Farm Credit accelerated the debt on March 9, 2023, TIMBER and its parent company have been in discussions with the Bank and have clearly described a methodology for curing any default.

Indeed, to date, insurance is in full force and effect as required for all collateral under the loans, the vessels remain secured in Cordova, TIMBER has invited and the Bank has cancelled an inspection, and that TIMBER has attempted to arrange another.

Farm Credit is not likely to succeed on the merits of its breach of contract, or its arrest, or its mortgage foreclosure claims. Indeed, given an opportunity, the Notes, even if in default, can be brought current within the next several months. Farm Credit will not suffer irreparable harm.
*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC                                                                 Page 7 of 11

Case 3:23-cv-00072-HRH   Document 13   Filed 05/10/23   Page 7 of 11

2. <u>There is No Presumption of Irreparable Harm</u>.

The movant carries the burden of persuasion. The harm must be actual an imminent rather than remote and speculative.[12]

Plaintiff however speculates on <u>potential</u> damages. That is, Plaintiff alleges that <u>it might</u> incur damage because TIMBER has failed to maintain adequate levels of insurance. But, TIMBER has adequate insurance. The Bank believes that the only proper way to keep the vessels from any damages, and to insure their safety is to dry dock the vessels and subject them to inspection recertification. However, a review of Plaintiff's supporting documents demonstrates that the vessels received condition surveys and were dry docked in 2022. A 2022 inspection of the Tug revealed it to be in serviceable condition with all necessary safety equipment in place. Indeed, the surveyor's letter also attached to Plaintiff's papers confirmed that the Tug is in an acceptable condition for use in Alaska bays and coastal waters. Similarly, the surveyor's letter certifies that the Barge is in an acceptable condition for use in Alaska bays and coastal waters. The surveyor's reports were provided to the Bank at the time of the loans. Nothing has changed. Thus, an argument of irreparable harm simply does not hold.

If the Bank's concern is about insurance, the proof that insurance requirements are met is attached to the Declaration of Shari Jensen. Fundamentally, Farm Credit's assertion

---

[12] *S. Wine of America v. Simcon*, 2011 U.S. Dist. Lexis 5762 (S. D. Florida 2011).

*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC                                                  Page 8 of 11

Case 3:23-cv-00072-HRH   Document 13   Filed 05/10/23   Page 8 of 11

"that TIMBER has allowed Farm Credit's collateral to remain uninsured/underinsured…." [Doc. 6 at 11] is demonstrable untrue.

3. <u>The Balance of the Equities Tips Heavily In TIMBER's Favor and Away From the Bank.</u>

The Bank asserts it has "attempted for months to communicate with TIMBER…." TIMBER has attempted for months to communicate with Farm Credit as well. TIMBER continues to communicate with the Bank both through its counsel, as well as its executives. Farm Credit's argument that the collateral remains uninsured/underinsured is untrue. Moreover, Farm Credit's argument that TIMBER "decided to move the vessels … after receiving notice by Farm Credit to cease use or movement …." is categorically untrue.[13] That false allegation is sufficient in itself to demonstrate the lack of balance of equity weighing in the Bank's favor.

4. <u>The Public Interest Weighs Against Granting an Injunction.</u>

Farm Credit argues that it is a cooperative with 23,000 members. That public interest would demonstrate that TIMBER's efforts to utilize the Tug & Barge in a lucrative market that would result in a net profit of $750,000 will assist Farm Credit as a cooperative, not debilitate it. Moreover, the public interest favors TIMBER because of TIMBER's relationship to KWAAN and its 400+ shareholders.

---

[13] *See* Declation of Marvin Adams.

*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC                                                                 Page 9 of 11

### 5. TIMBER Will Suffer Significant Harm Should the Injunction be Granted.

TIMBER will suffer significant harm if the injunction is granted. Moreover, requiring the vessels to transit back to Yakutat and they would be laid off, would be unduly expensive, wasteful, and cause a loss of significant profits that would assist both the Bank and TIMBER. There are qualified surveyors in Cordova. Cordova is easily reachable. A review of surveyors in Cordova demonstrates that there are at least 3 reputable surveyors. By contrast, Yakutat has 0 surveyors.

Yakutat does not have a dry dock. A transit would require travelling to Juneau, Ketchikan or Seward to perform the inspections requested by the Plaintiff in dry dock. By contrast, both Bank and TIMBER have communicated regarding TIMBER arranging a neutral surveyor to inspect the vessels in place in Cordova.

Also running directly against the public interest, the Bank seeks to protect, the amount of time to store the vessels, inspect them, drydock them, and ultimately sell them appears prohibitively expensive and unavailable. Moreover, such would result in additional economic harm to TIMBER.

Ultimately, Plaintiff would not suffer irreparable harm. Rather, TIMBER will without question suffer provable significant irreparable harm. For this reason, should the court grant a preliminary injunction, they must weigh the amount of the bond. The Bank, based upon speculation that the vessels are uninsured, urges a mere $25,000 bond. But, the costs to TIMBER will be over one million dollars. Accordingly, if the court determines

*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC                                   Page 10 of 11

Case 3:23-cv-00072-HRH   Document 13   Filed 05/10/23   Page 10 of 11

that a preliminary injunction is appropriate, a bond of not less than $1,000,000 must be required.

CONCLUSION

The Bank's motion for a preliminary injunction is based not on fact, but on speculation and false assumptions. The Bank's motion must be denied. Alternatively, if a preliminary injunction is granted, a bond must be equal to irreparable harm that will result to TIMBER, in an amount of not less than 5 million dollars.

Respectfully submitted this 10th day of May, 2023, at Anchorage, Alaska.

FORTIER & MIKKO, P.C.

/s/ Samuel J. Fortier
Alaska Bar No. 8211115
1600 A Street, Suite 101
Anchorage, Alaska 99501
Ph: (907) 277-4222
Fax: (907) 277-4221
Email: sfortier@fortiermikko.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2023, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system and can be accessed through that system.

/s/ Samuel J. Fortier

*Agwest Farm Credit, PCA v. Yak-Tat Kwaan, Inc.*
Opposition to Agwest Farm's Motion for Preliminary Injunction
Civil Action No. 2:23-cv-00496-JCC                                    Page 11 of 11

Case 3:23-cv-00072-HRH   Document 13   Filed 05/10/23   Page 11 of 11